UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD J. M.,[1] | Case No.:  22-cv-1926-MMP |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND AND REMANDING FOR FURTHER PROCEEDINGS** |
| v. | |
| MARTIN O'MALLEY, Acting Commissioner of Social Security,[2] | [ECF No. 17] |
| Defendant. | |

Plaintiff Donald J. M. ("Plaintiff") filed this action on December 7, 2022, seeking review of the Commissioner of Social Security's ("Commissioner" or "Defendant") denial of his application for disability insurance benefits. [ECF No. 1.] Pursuant to the Court's

---

[1] In accordance with Civil Local Rule 7.1(e)(6)(b), the Court refers to all non-government parties by using their first name and last initial.

[2] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Although Plaintiff originally brought this action against Former Acting Commissioner Kilolo Kijakazi, this case may properly proceed against Martin O'Malley pursuant to 42 U.S.C. § 405(g).

Scheduling Order, Plaintiff filed his brief seeking reversal and remand ("Motion for Remand") on June 9, 2023, Defendant filed a Response to the Motion for Remand on July 10, 2023, and Plaintiff filed a Reply on July 24, 2023. [ECF Nos. 17, 19, 20.] Following transfer, the parties consented to proceed before the undersigned Magistrate Judge on December 4, 2023. [ECF No. 24.] The Court has taken Plaintiff's Motion for Remand under submission without oral argument.

For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion for Remand and **REMANDS** this action for further proceedings consistent with this opinion.

## I.    PROCEDURAL BACKGROUND

This action is not the first appeal of the Commissioner's denial of Plaintiff's disability application to this Court. Plaintiff first filed an application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act on August 3, 2017, alleging a disability onset date of December 17, 2016. Administrative Record ("AR") 437–38. After the application was denied upon initial determination and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 346–49, 350–55, 359–60. An ALJ held a hearing on Plaintiff's original DIB application on April 5, 2019 and issued an unfavorable decision on June 17, 2019. AR 281, 34–58. The Appeals Council denied Plaintiff's request for review of that denial on July 29, 2020, making the ALJ's decision the final decision of the Commissioner. AR 34–58, 13–19. Plaintiff appealed that decision to this Court on September 4, 2020, in Case No. 20-cv-1736-JLB. AR 1599–1602. Pursuant to a joint motion by the parties, that action was voluntarily remanded back to the agency for further administrative proceedings on November 4, 2021. AR 1603–05, 1606–07.

In the meantime, Plaintiff filed another application for DIB on August 19, 2020, this time with an alleged disability onset date of December 27, 2016 (ten days later than his original alleged disability onset date). AR 1862–63. Following remand to the agency, the Appeals Council instructed the ALJ to (1) give further consideration to the medical source opinions and prior administrative medical findings; (2) further evaluate Plaintiff's

mental impairments in accordance with the "special technique" outlined in 20 C.F.R. § 404.1520a, documenting application of the technique in the decision by providing specific findings and rationale for each of the functional areas described in that provision; (3) give further consideration to Plaintiff's maximum RFC and provide appropriate rationale with specific references to the record in support of the assessed limitations; and (4) if warranted by the record, obtain supplemental evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on Plaintiff's occupational base. AR 1610–12.

The ALJ held another administrative hearing on June 23, 2022, during which he took testimony from medical expert Dr. Nancy Tarrand, Plaintiff, and VE Heidi Paul. AR 1479–1518. Following the supplemental hearing, the ALJ issued another unfavorable decision denying Plaintiff's DIB application on August 26, 2022, finding Plaintiff was not disabled from his alleged disability onset date of December 17, 2016 through his date last insured of December 31, 2021. AR 1446–78.[3] Because Plaintiff did not timely request review by the Appeals Council, and the Appeals Council did not assume jurisdiction on its own motion within sixty days of the ALJ's decision, the ALJ's decision became the final decision of the Commissioner on October 31, 2022. 42 U.S.C. § 405(h). Plaintiff timely appealed the denial to this Court for federal judicial review on December 7, 2022. [ECF No. 1]; 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

---

[3] In his decision, the ALJ explained the remand of the 2017 DIB application rendered Plaintiff's 2020 DIB application duplicative, and he would accordingly "consolidate the claims files, associate the evidence, and issue a new decision on the consolidated claims." AR 1450. Due to the consolidation of the claims, the ALJ used Plaintiff's original alleged disability onset date of December 17, 2016. *Id.*

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard requires "more than a mere scintilla" of evidence, "but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). The standard is "highly deferential." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony and resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Thus, "'[w]here evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotations and citation omitted). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.* at 1010; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the decision was based on legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch*, 400 F.3d at 679 (citation omitted).

### III.    SUMMARY OF ALJ'S FINDINGS

#### A.    The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520;[4] *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least 12 months; if not, a finding of nondisability is made and the claim is denied. *Id.*; *see also* 20 C.F.R. § 404.1509 (setting forth the 12-month duration requirement). If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listings") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed, and benefits are awarded. *Lounsburry*, 468 F.3d at 1114.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listings, the ALJ proceeds to the fourth step of the disability evaluation process. The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work. *Id.* Therefore, the ALJ must determine the claimant's RFC before moving to step four.

---

[4] Unless otherwise noted, all references to the agency regulations herein are to the regulations in effect at the time of the ALJ's decision.

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR[5] 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It reflects the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of his impairments—even those that are not severe, *see* 20 C.F.R. § 404.1545(a)(1)–(2), (e)—and must assess his "work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1; *see also Valentine*, 574 F.3d at 690 (holding "an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence" favorable to a claimant's position. *Hill v. Astrue*, 698 F.3d 1153, 1161–62 (9th Cir. 2012).

An RFC assessment is ultimately an administrative finding reserved to the ALJ. 20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545(a)(3). At step four of the disability analysis, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

The claimant bears the burden of proof in the first four steps of the sequential process. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At step five, the burden then shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. §

---

[5] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

404.1560(c)(1) and (2); *see also* 20 C.F.R. § 404.1520(g)(1).

**B.    The ALJ's Application of the Five-Step Process in This Case**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period between his alleged disability onset date of December 17, 2016 through the date last insured of December 31, 2021. AR 1452.

At step two, the ALJ determined that Plaintiff had severe impairments of obesity, degenerative disc disease of the lumbar spine, osteoarthritis of the right knee, obstructive sleep apnea, anxiety, obsessive compulsive disorder ("OCD"), post-traumatic stress disorder ("PTSD"), and depressive disorder. *Id.* The ALJ also discussed Plaintiff's other medically determinable impairments of primary hyperaldosteronism, hypertension, hypercholesterol, history of gout, history of gastroesophageal reflux disease, traumatic brain injury, cognitive disorder, somatic symptom disorder, unspecified insomnia, and adrenal nodules, but found there was insufficient evidence in the record to establish that any of these impairments, taken singly or in combination, resulted in more than a minimal effect on Plaintiff's ability to work. Accordingly, the ALJ deemed these impairments non-severe. *Id.*

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listing of Impairments, noting that he had given "particular attention" to Listing 1.15 related to disorders of the skeletal spine, Listing 1.18 for abnormality of a major joint, and Listing 12.04 for mental impairments. AR 1452–55.

The ALJ then determined that Plaintiff had the RFC to perform medium work, as defined by 20 C.F.R. § 404.1567(c), with the following limitations:

> [T]he individual is limited to frequently climbing of ramps/stairs, occasionally climbing of ladders/ropes/scaffolds, and frequent balancing, stooping, kneeling, crouching and crawling. The individual can understand, remember, and carry out simple, routine tasks, no interaction with the general public, only occasional work-related, non-personal, non-social interaction with co-workers and supervisors, and is limited to jobs requiring only simple work-

related decisions; however, can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work.

AR 1455.

At step four, based on the testimony of the VE during the supplemental administrative hearing and Plaintiff's RFC, the ALJ found that Plaintiff was unable to perform his past relevant work as a warehouse supervisor, sales clerk, claims clerk, or furniture salesman. AR 1467–68.

At the fifth and final step of the disability analysis, once more relying on the VE testimony and based on Plaintiff's RFC, the ALJ concluded that Plaintiff remained able to perform the requirements of certain jobs existing in the national economy, including the representative occupations of linen room attendant, laundry worker, and hospital cleaner. AR 1468–69. Therefore, the ALJ found Plaintiff was not disabled from his alleged disability onset date through the date last insured. AR 1469.

## IV.   DISCUSSION

Plaintiff raises two claims of error in his Motion for Remand. First, Plaintiff argues the ALJ failed to articulate clear and convincing reasons for rejecting Plaintiff's subjective testimony regarding the severity of his mental health symptoms and limitations. [ECF No. 17 at 4–15.] Second, Plaintiff contends the ALJ failed to incorporate the moderate mental limitations assessed by psychiatric consultative examiner Dr. Gregory M. Nicholson—whose opinion the ALJ found persuasive with respect to those moderate limitations—into his RFC determination. [*Id.* at 16–23.]

Defendant responds, first, that the ALJ properly assessed Plaintiff's allegations regarding the severity of his symptoms, and that Plaintiff's arguments do not take into account the ALJ's full explanation of why he discounted Plaintiff's subjective symptom testimony. [ECF No. 19 at 3–8.] Second, Defendant argues that Dr. Nicholson's assessment of "moderate" limitations in certain areas of mental functioning did not support a more restrictive RFC than the one the ALJ assigned. [*Id.* at 8–10.]

The Court will address each claim of error in turn.

8

**A.      The ALJ's Consideration of Plaintiff's Subjective Testimony**

Before turning to the ALJ's analysis of Plaintiff's subjective reports regarding the intensity, severity, and persistence of his symptoms, the Court will outline the content of those reports.

1.      Plaintiff's Subjective Reports Regarding his Symptoms

a.      Plaintiff's August 3, 2017 and August 14, 2017 Function Reports

The first source of information in the record regarding Plaintiff's subjective reports about his symptoms are the two Function Reports that he completed in connection with his first disability application on August 3 and August 14, 2017, respectively. AR 471–78, 481–90. In those reports, Plaintiff reported that he had suffered "a lot of mental traumas," anxiety attacks, headaches, memory loss, mood swings, outbursts, and other mental problems over the past twenty years, and that he had been diagnosed with traumatic brain injury, PTSD, and OCD as a result of his service in the Gulf War. AR 471, 482. He reported that he was homeless and living in his van with his wife, his wife takes care of him, he cannot cope with people, he has trouble sleeping due to severe sleep apnea and nightmares, he needs special reminders from his wife to take care of personal needs and grooming and to take medicine, his wife sometimes helps him get dressed when he has back pain, he shops in stores three times a month but usually cannot shop longer than thirty minutes due to anxiety, and he cannot pay bills or handle money because of his memory loss. AR 472–75, 483–85. As for hobbies and social activities, he reported reading and going to church three times a week, but he gets tired right away when reading, and he does not like to be around a lot of people and people do not like to be around him. AR 475–76, 486. He also reported going to social groups at the VA once per week and to the swimming pool. AR 486.

In the section related to his physical and mental abilities, in the August 3 Function Report, he checked all nineteen boxes for the abilities that are affected by his impairments, including lifting, squatting, bending, standing, reaching, walking, sitting, kneeling,

talking, hearing, seeing, memory, stair climbing, concentration, understanding, following instructions, using hands, getting along with others, and completing tasks. AR 476. However, in the August 17 Function Report, he checked only fifteen of the nineteen boxes, excluding seeing, hearing, understanding, and using hands. AR 487. In the August 3 Function Report, Plaintiff reported he can only walk twenty feet before needing to rest, and he must rest for one minute before he can walk again. AR 476. In the August 17 Function Report, he stated he can walk three blocks before needing to rest but needs to rest for three minutes before he can walk again. AR 487. In the first report, he stated he can only pay attention for ten minutes, does not follow written or spoken instructions well, and that he is "very bad" at handling stress and changes in routine. AR 476–77. In the second report, he similarly reported he cannot pay attention for long and it "depends on the day," he can follow written instructions "ok" depending on how he feels at the time, he can follow spoken instructions "ok if I feel it's important," and he does not handle stress of changes in routine well. AR 487–88. He also reported he was fired twice for insubordination with supervisors. AR 488.

### b.   Plaintiff's Hearing Testimony

The second source of information regarding Plaintiff's subjective reports about his symptoms was his testimony during both the initial and supplemental administrative hearings, which took place on April 5, 2019 and June 23, 2022, respectively. AR 273–309; AR 1480–1518.

During the initial hearing, Plaintiff testified he and his wife were living with their son in Texas. AR 278. He had previously lived in San Diego and briefly stayed in Mexico at a mission where he was the pastor before moving to Texas. AR 278–79. Plaintiff explained before moving to San Diego, he left his last job at a Mattress Warehouse on December 17, 2016, because his health issues had led him to bankruptcy and losing his home. AR 279–80. Testifying specifically about his symptoms, Plaintiff stated his biggest health issues were his mental health impairments, including his PTSD and OCD. AR 283–84. He also testified he has physical impairments, including degenerative disc disease and

gout flares that sometimes cause his right foot to swell. AR 284. He reported he has six herniated discs that cause a pain level of 8–10/10 and pain from arthritis in his right knee, back, neck, and hands. AR 284–85. He testified he usually needs to shift positions approximately every thirty minutes when sitting due to pain in his knee and back and can only stand for approximately ten minutes before needing rest. AR 289–290. He presented with a cane at the hearing and explained that although he is supposed to use it all the time, he only uses it when he is "really in pain." AR 285. Plaintiff stated when his back pain becomes "overwhelmingly bad," he takes muscle relaxers, which happens a couple of times a week. AR 296. He also testified he had a traumatic brain injury ("TBI") from an accident in a fire when he was on active duty during Desert Storm, and the TBI causes memory issues. AR 286, 296–97.

As for mental health symptoms, Plaintiff stated he suffers from anxiety that caused him to feel like he was having a heart attack or stroke and gave him hot flashes. 286–87. He also stated he had problems with memory loss, making it difficult to remember to take his medication without his wife's assistance. He testified the mood stabilizer Paxil helped him stay "a lot more calm." AR 287–88. Plaintiff testified he is able to take care of his own personal care and grooming needs such as bathing and dressing himself in the morning, but he is not always able to help with chores around the house depending on how he feels. AR 288–89. He stated he did not like to go to the store because of anxiety. AR 289–90. He stated he struggled with impulse control and excessive spending, leading to bankruptcy and homelessness. AR 294. Plaintiff also testified his wife does most of the driving due to his medication causing dizziness, and he can only drive for up to an hour at a time. AR 278, 290–91. He testified he is "dizzy 24/7." AR 294. He stated taking care of his health had become "a full-time job" and he could not imagine working at any job while he was trying to get better. AR 298.

During the supplemental hearing, Plaintiff testified he continued to suffer from back pain due to six herniated discs in his back and rated his pain level at 8/10. AR 1492–93. He testified his legs swell up if he stands for longer than 15 minutes, which causes pain in

his right knee, as well as a tumor on his adrenal gland that sometimes causes pain and increases his fight-or-flight response. AR 1493. He testified he had not had a gout flare in a few months and it was controlled with medication, but his gout causes his right foot to swell when he has a flare. AR 1494–95. Although Plaintiff presented with a cane during his first administrative hearing, he did not present with a cane at the supplemental hearing and testified that he sometimes uses a walker if he gets dizzy or out of breath. AR 1495.

Plaintiff also testified he was living in a trailer on his son's property in Arizona. AR 1490–91. As for his mental health symptoms, Plaintiff testified he previously moved around frequently due to an "impulse [ ] to leave." AR 1498. However, he stated he "finally" felt "settled down" in Arizona, and he felt "peaceful" there. AR 1495–96. He testified he takes Prozac, which seems to keep him "okay," and he takes hydroxyzine for anxiety on bad days. AR 1496. He explained that his wife helps him manage his medication by organizing them in box for daily use in a month. AR 1503. He stated he does not want to be around people and he really likes to be alone. AR 1496. He stated his younger grandchildren are only allowed to visit his home when his wife his present due to his "anger issues." AR 1499–1500. He reported he has nightmares about four times per week and uses a sleep apnea machine to help him sleep, but he usually sleeps only five hours per night. AR 1496. He stated he only drives about two times a month, and his wife usually does all the driving. AR 1490. He also testified he impulsively bought a truck that he never drove and engaged in other excessive spending before handing financial decisions over to his wife. AR 1500–01. He testified he had problems with intrusive thoughts, compulsions, and irritability due to OCD, and he struggles with any changes to his routine. AR 1501–03.

### 2. Legal Standard for Evaluating Plaintiff's Subjective Reports

An ALJ evaluating a claimant's subjective complaints must follow a two-step inquiry. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). First, the claimant must provide evidence "that [his] impairments could reasonably have caused some degree of [the symptoms]." *Smolen*, 80 F.3d at 1283. If the claimant satisfies the first step, and there

is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). An ALJ must "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). An ALJ's decision must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (internal quotations and citation omitted).  However, the relevant consideration "isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4h 489, 499 (9th Cir. 2022).

### 3.   The ALJ's Analysis of Plaintiff's Subjective Reports

Here, the ALJ discussed Plaintiff's testimony regarding his symptoms from both the April 5, 2019 and June 23, 2022 administrative hearings in detail. AR 1456. The ALJ found that while Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms[,]" Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not consistent with the medical evidence and other evidence in the record." *Id.* The ALJ gave three broad reasons for reaching this conclusion.

First, the ALJ found that, in terms of Plaintiff's physical impairments, the objective medical evidence failed to support Plaintiff's allegations of disabling symptoms and limitations and gave the following list of examples to support this conclusion:

- A May 3, 2018 EMG neurological study conducted by Dr. Chamindra Gurusinghe Konersman showing that the results were within normal limits. AR 1056–58.

/ /

- A December 4, 2018 medical consultative examination conducted by internal medicine CE Phong Dao, DO, showing Plaintiff's range of motion in his neck and in his spine were within normal limits, his range of motion in his knees was grossly normal bilaterally despites crepitus of the knees, his range of motion in the hips and ankles was grossly normal bilaterally, his gait was within normal limits, and his strength in all extremities was 5/5 with good tone bilaterally. AR 945–46.

- A January 24, 2019[6] examination conducted by Dr. Lina Ghory at the VA North Texas Healthcare System when Plaintiff complained of chronic lower back pain that was aggravated three days prior. Dr. Ghory's examination showed no swelling in the right knee joint and no restrictions with Plaintiff's range of motion, no gross deformity in the back, he was able to walk on heels and toes, and his cranial nerves were intact. AR 1192–93.

- A January 24, 2019 x-ray of the bilateral knees showing mild narrowing of the medial joint spaces of both knees, mild arthritic change in the patellar compartment of the right knee, and no other abnormalities. AR 1122.

- A July 1, 2019[7] treatment record from the VA San Diego Healthcare System documenting a neuropsychological exam conducted by J. Vincent Filoteo, PhD, showing results within normative expectations and not consistent with a neurocognitive disorder. AR 2120.

- A September 20, 2021 treatment record from the VA San Diego Healthcare System, during which neurologist Adil Khan, MD performed a neurological exam and reported Plaintiff had 5/5 strength in the upper and lower

---

[6] The ALJ misstates the date of this examination as January 1, 2019, but otherwise describes the referenced findings accurately. AR 1457.

[7] The ALJ misstates the date of this examination as July 9, 2019, but otherwise describes the referenced findings accurately.

extremities, the ability to walk with tandem walk, on heels and toes, without difficulty, his sensation was grossly intact, and there were no ongoing residual symptoms of traumatic brain injury. AR 2724.

- A June 1, 2022 treatment record from the VA San Diego Healthcare System Emergency Department reflecting an unremarkable physical examination of Plaintiff. AR 3168–71.

Second, with respect to Plaintiff's mental impairments, the ALJ also found that the clinical findings of examining mental health sources did not support Plaintiff's allegations of disabling symptoms and limitations. The ALJ cited to the following record evidence to support this finding:

- A September 19, 2017[8] psychological consultative examination conducted by Kathy Vandenburgh, PhD, who found Plaintiff had a full scale IQ of 80 (in the low average range), he was generally pleasant and cooperative and was alert, he was not exhibiting obvious or subtle psychotic behavior during the interview, his speech was normal, he knew his address, telephone number, and birth date and could recall one out of three objects after three minutes, he was able to focus on tasks and needed no supervision to persist at tasks, and he was able to recall five digits forward and three digits backward and could spell the word "world" backwards. AR 844–46.

- A September 18, 2017 mental status examination by psychiatrist Abesh Bhattacharjee, MD, who found Plaintiff's thought process was linear and goal-oriented, although his mood was frustrated and anxious. Dr. Bhattacharjee reported no evidence of flight of ideas, tangentiality or circumstantiality; Plaintiff's cognition was grossly intact; he had good

---

[8] The ALJ misstates the date of this examination as September 17, 2019, but otherwise describes the referenced findings accurately.

insight and judgment; and his speech had normal rate, rhythm, and tone. AR 926–27.

- A June 19, 2018[9] mental health consultation with Marriage and Family Therapist Katelyn Webster, who reported Plaintiff was well-groomed, dressed appropriately, alert, and cooperative, with a euthymic mood with congruent affect. The therapist further reported Plaintiff's thought process was coherent and logical, his speech was within normal limits in terms of rate, volume, tone, and prosody, and reported no indications of active psychosis, delusions, or paranoia. AR 1004.

- A September 18, 2018 mental health consultation with Dr. Bhattacharjee, when Plaintiff reported, "I am doing fine, mood is good." Dr. Bhattacharjee's mental status exam during this visit showed Plaintiff had a pleasant demeanor and cooperative attitude and bright, happy affect. Further, the doctor reported Plaintiff's thought process ruminated but was concrete, there was no evidence of flight of ideas, tangentiality or circumstantiality, and his cognition was grossly intact. AR 982.

- A December 3, 2018 psychological consultative examination with psychological Karis Irving, MD, in which the doctor's mental status exam reflected Plaintiff was cooperative with good eye contact, he spoke with normal volume and rate, his thought process did not exhibit looseness of association, thought disorganization, flight of ideas, thought blocking, tangentiality or circumstantiality, he was able to perform serial sevens and serial threes, he could spell "music" forward and backward, and he was alert and oriented as to person, place, and situation. AR 957–58.

---

[9] The ALJ misstates the date of this examination as June 20, 2018, but otherwise describes the referenced findings accurately.

- A July 1, 2019 treatment record with Dr. Bhattacharjee at the VA San Diego Healthcare System showing that Plaintiff's thought process was linear and goal oriented, although his mood was frustrated and anxious. Dr. Bhattacharjee reported no evidence of flight of ideas, tangentiality or circumstantiality, Plaintiff's cognition was grossly intact, he had good insight and judgment, and his speech had normal rate, rhythm, and tone.[10]

- A July 21, 2020 treatment record with Dr. Bhattacharjee, in which the psychiatrist noted Plaintiff had been living in a van but recently bought a condo. The mental status exam reflected Plaintiff's behavior was cooperative with a passive demeanor, he was alert and attentive, and he had speech with normal rate, rhythm, and tone. Dr. Bhattacharjee further reported Plaintiff had positive affect and a ruminating but concrete thought process. During this appointment, Plaintiff reported, "I am doing better, no outburst" and Dr. Bhattacharjee reported Plaintiff's cognition was grossly intact, and he had good insight and judgment. AR 2534–39.

- A March 11, 2021 psychological consultative examination conducted by Dr. Gregory Nicholson, showing that Plaintiff was neatly and casually groomed, made good eye contact, had good interpersonal contact, and was generally cooperative. Dr. Nicholson found Plaintiff coherent and organized in thought process, with no bizarre or psychotic thought content. The doctor further reported Plaintiff denied recent auditory or visual hallucinations and he did not appear to be responding to internal stimuli during the interview.

---

[10] The Court is unable to locate any treatment record from July 1, 2019 with Dr. Bhattacharjee in the record. This citation appears to be an erroneous duplicate of the ALJ's discussion of the September 18, 2017 mental status examination conducted by Dr. Bhattacharjee. Indeed, the ALJ cites to the September 18, 2017 treatment record here. *See* AR 1459 (citing to EX 5F/69, which corresponds with AR 926, discussed above). Moreover, the ALJ's description of the record aligns with the information in the September 18, 2017 record at AR 926–27.

Plaintiff's speech was normal and clearly articulated, he was alert and oriented as to person, place, and situation, he was of average intelligence and able to perform serial threes. In terms of memory, Dr. Nicholson reported Plaintiff was able to recall three words immediately, two words after five minutes, and three words with hints. Plaintiff was also able to calculate eighty cents would be received from a dollar if two oranges were bought at ten cents each. AR 2636–40.

- An August 16, 2021 treatment record from the VA Southern Arizona Healthcare System, during which Plaintiff reported he enjoyed playing games and birdwatching. A mental status exam conducted by Dr. Priti Sinha reflected Plaintiff was well-groomed with good hygiene in no apparent distress, with cooperative and pleasant behavior and conversational speech with normal rate and volume. Dr. Sinha reported although Plaintiff's thought process was sometimes tangential regarding his health, his association was intact and he had no delusions or obsessions, and he had fair attention, concentration, judgment, and insight. AR 2893, 2895–96.

- A January 5, 2022 treatment record from another visit with Dr. Sinha, during which Dr. Sinha reported Plaintiff's behavior was cooperative and pleasant, his speech was conversational with normal rate and volume he had restricted affect but linear, goal-directed thought processes; he had no delusions and no feelings of helplessness, he was oriented as to person, place, and situation, and he had grossly intact memory and fair concentration. AR 3092–93.

- A May 10, 2022 treatment record from Dr. Sinha, during which Dr. Sinha reported Plaintiff's behavior was cooperative and pleasant, his speech had normal rate, volume, and tone, he had restricted affect but linear, goal-directed thought processes and intact associations, he had no delusions and no feelings of helplessness, and he had grossly intact memory and fair concentration. AR 3180–81.

Third, in accordance with SSR 06-03p, the ALJ reviewed Plaintiff's subjective Function Reports he completed on August 3 and August 14, 2017, which the Court summarized above. AR 1460–61. After describing the Function Reports in detail, the ALJ then discussed the contents of Plaintiff's wife's third-party report regarding Plaintiff's symptoms, finding it "helpful and instructive in formulating the RFC above." AR 1461. Specifically, the ALJ explained his RFC determination took Plaintiff's wife's statements into account "by limiting him to understanding, remembering, and carrying out simple, routine tasks, no interaction with the general public, only occasional work-related, non-personal, non-social interaction with co-workers and supervisors, and [limiting him] to jobs requiring only simple work-related decisions, but he can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work." AR 1461.

However, with respect to Plaintiff's subjective reports about the intensity, persistence, and limiting effects of his symptoms, the ALJ ultimately concluded Plaintiff's statements "are inconsistent with the longitudinal record." AR 1461. To support this finding, the ALJ relied on statements in Plaintiff's Function Reports regarding his activities of daily living, social outings, and physical and mental capabilities. Specifically, the ALJ pointed to Plaintiff's statements he went outside every day, all day, he traveled by driving his van, he went to church three times per week and attended a social group at the VA once per week, he can perform most of his personal hygiene tasks with only occasional assistance from his wife when dressing, and he was able to clean his van on a weekly basis when his back was not painful. AR 1461 (citing AR 471–78, 481–90). Additionally, the ALJ cited to a treatment record from August 12, 2019 showing Plaintiff "uses a calendar and is able to manage his medical appointments." *Id.* (citing AR 2113). Next, the ALJ described record evidence showing Plaintiff "moved across the country on multiple occasions during the alleged period of disability[,]" including moving to Texas in January 2019, moving to Yuma, Arizona in July 2021, moving to Plymouth, Pennsylvania in August 2021, and moving back to Yuma shortly before the June 2022

supplemental hearing. *Id.* The ALJ reasoned Plaintiff's "ability to perform the above activities . . . suggests [he] is not as limited as he alleged in his disability application." *Id.*

In his Motion to Remand, Plaintiff contends the ALJ's rationale for discounting Plaintiff's subjective testimony does not meet the "specific, clear, and convincing" standard. [ECF No. 17 at 7.] First, Plaintiff argues the ALJ's summary of various mental health examinations and appointments for the proposition that "[t]he clinical findings of the examining mental health sources fails to support [Plaintiffs] allegations of disabling symptoms and limitations" amounts to a rejection of Plaintiff's testimony solely due to a lack of objective medical evidence, which is prohibited under controlling case law and agency regulations. [*Id.* at 7–8]; AR 1458; *see, e.g.*, *Bunnell*, 947 F.2d at 345 ("[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); *Burch*, 400 F.3d at 680; 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

The Court does not find Plaintiff's first argument persuasive. Plaintiff is correct an ALJ may not rely solely on the lack of objective medical evidence to support a claimant's statements regarding his symptoms. Here, however, the ALJ not only found there was a lack of objective medical evidence to support Plaintiff's allegations of disabling limitations; he also found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "*are not consistent with* the medical evidence and other evidence in the record." AR 1456 (emphasis added). As the Ninth Circuit explained in rejecting a similar argument, claimants:

> [S]ometimes mischaracterize *Burch* as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony. That is a misreading of *Burch*. When objective medical evidence in the record is *inconsistent* with the claimant's subjective

1  testimony, the ALJ may indeed weigh it as undercutting such testimony. We
2  have upheld ALJ decisions that do just that in many cases.

3  *Smartt*, 53 F.4th at 498 (collecting cases). Here, the ALJ provided descriptions of
4  treatment records from over a dozen medical appointments that reflected greater physical
5  and mental capabilities than Plaintiff indicated in his subjective statements regarding his
6  symptoms, including but not limited to: normal physical examinations showing full range
7  of motion, normal neurology and neuropsychological exams showing no ongoing residual
8  symptoms of TBI, grossly intact memory, fair concentration, judgment, and insight, the
9  ability to interact with others in a pleasant and cooperative way, and the ability to focus
10  on and persist at tasks without supervision. AR 1456–60.

11  Further, the ALJ gave reasons beyond the objective medical evidence to discount
12  Plaintiff's testimony, including his reported activities of daily living and other evidence in
13  the record regarding his capacity to manage his appointments and keep a calendar, which
14  defeats Plaintiff's argument that the ALJ relied solely on a lack of objective medical
15  evidence to discredit his testimony. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.
16  2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not
17  fully corroborated by objective medical evidence, the medical evidence is still a relevant
18  factor in determining the severity of the claimant's pain and its disabling effects.") (citing
19  20 C.F.R. § 404.1529(c)(2)); *Knibbs v. Berryhill*, 731 F. App'x 684, 685 (9th Cir. 2018)
20  ("As to the credibility findings, the ALJ did not rely solely on the absence of objective
21  medical evidence or a lack of medical training. Instead, the ALJ also cited to other
22  substantial evidence in the record, including specific and germane inconsistencies between
23  [the plaintiff's] and his mother's testimony and the objective medical evidence reports as
24  well as [the plaintiff's] own reported activities."); *Searls v. Kijakazi*, No. 21-35970, 2022
25  WL 16849061, at *1 (9th Cir. Nov. 10, 2022) ("The ALJ did not rely solely on the view
26  that [the plaintiff's] testimony was inconsistent with the objective medical evidence, but
27  instead appropriately considered that factor together with other factors."). Therefore, the
28  Court finds the ALJ's reliance on inconsistencies between Plaintiff's testimony and the

medical evidence is a specific, clear, and convincing reason to discount his testimony.

Second, Plaintiff contends the ALJ did not properly characterize how Plaintiff described his symptomology in the August 2017 Function Reports. [ECF No. 17 at 9.] Plaintiff argues the ALJ improperly ignored that Plaintiff stated in the Reports he needed special reminders from his wife to take care of his personal needs and grooming, as well as reminders to take his medication. [*Id.*]; *see also* AR 473, 484. Plaintiff also highlights the sections of the Function Reports where he stated he got tired right away when reading, he used to serve regularly in church but that has decreased since his illness, he liked to be alone and not around a lot of people, he used to socialize a lot but now would rather be alone, he shopped in stores about three times a month but usually cannot did so for more than thirty minutes due to anxiety, and he fatigued and tired quickly, got frustrated fast, got angry, had anxiety, felt like falling a lot, experienced dizziness, had migraines, and had lots of pain. [ECF No. 17 at 9–10 (citing AR 472–76).] Plaintiff further argues the ALJ's reliance on some statements in the Function Reports to find that other statements in his Function Reports are not fully credible is not clear and convincing, because, since Plaintiff

> [A]dmitted to the aforementioned activities in his disability application, the ALJ using such activities as suggesting [Plaintiff] "is not as limited as he alleged in his disability application" lacks the support of substantial evidence. The activities [Plaintiff] listed in the function reports cited by the ALJ are exactly the abilities and limitations [Plaintiff] alleged in his disability application.

[ECF No. 17 at 10–11.]

The Court finds the ALJ's summary of Plaintiff's Function Reports accurately characterizes Plaintiff's subjective descriptions of his limitations. For example, the ALJ noted Plaintiff needed help with dressing when his back was painful, his wife prepared most of his meals for him, his wife handled all of the finances, and he was very limited on lifting heavy objects. AR 1460. The ALJ also accurately stated Plaintiff "reported [he] needed no assistance with bathing, caring for his hair, shaving[,] using the toilet, etc." *Id.*

The Function Reports include one section directing the claimant to explain how his impairments affect his ability to engage in personal care tasks and another section regarding whether the claimant needs special reminders to do so. *See* AR 472–73, 483–84. The ALJ's statement that Plaintiff reported he "needed no assistance" with personal care, other than assistance with dressing when his back is painful, accurately reflects what Plaintiff stated in the first of these sections in each Function Report—that is, he had the physical ability to engage in personal care tasks, with the exception of needing assistance with dressing when his back was painful. AR 473, 483–84.

The Court further finds the ALJ's reliance on Plaintiff's activities of daily living and capabilities as a basis to discount Plaintiff's claims of disabling limitations is a specific, clear, and convincing reason. "Consideration of daily activities is proper when they indicate activity or skills that are transferable to the workplace, or when the activities contradict the claimant's other testimony." *Leah K. v. Comm'r of Soc. Sec.*, 616 F. Supp. 3d 1099, 1109 (D. Or. 2022) (citing *Orn*, 495 F.3d at 639). The fact the ALJ did not discuss the section of the Function Report regarding Plaintiff's need for special reminders from his wife to engage in personal care and grooming does not render the ALJ's reliance on evidence of Plaintiff's abilities to "perform most of his personal care hygiene tasks" erroneous. "Even if the claimant experiences some difficulty or pain, [his] daily activities may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Smartt*, 53 F.4th at 499 (internal quotations and citation omitted).

Additionally, the Court finds no error in the ALJ's reliance on some statements in the Function Reports to discount other statements in the Function Reports or in other sources of Plaintiff's subjective testimony. For example, although Plaintiff states in his August 3, 2017 Function Report he is "not good around a lot of people" and he "would rather be alone" than socialize, he also reports in his August 14, 2017 Function Report he goes to church three times a week and social groups at the VA once per week, and he is "always taking part" in different activities at the VA social groups. AR 476, 486. While

both statements were included in Plaintiff's disability application, the Court cannot agree with Plaintiff the ALJ may not cite to activities discussed in one part of his disability application to find inconsistencies with other limitations alleged in his disability application. [*See* ECF No. 17 at 11.] It is appropriate for the ALJ to rely on "inconsistent statements in [a claimant's] testimony" in assessing how much weight to give to Plaintiff's subjective statements regarding his symptoms. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *see also Bunnell*, 947 F.2d at 346 ("So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony.").

As for the ALJ's finding Plaintiff's multiple moves across the country during the disability period suggests he is "not as limited as he alleged in his disability application[,]" Plaintiff argues those moves are in fact evidence of his debilitating mental health symptoms, as described by his wife in her third-party reports that the ALJ credited as "helpful and instructive" in formulating the RFC. [*See* ECF No. 17 at 13.] Specifically, Plaintiff's wife explained in one of her reports dated June 18, 2022 Plaintiff's PTSD, anxiety, and other mental health symptoms caused him to become paranoid and develop compulsions to "mov[e] me and the kids from house to house different states all the time . . . he kept switching his mind and jobs and we kept moving and moving to the point of all of us being chronically homeless[.]" AR 2063. Plaintiff's wife also explained in a September 1, 2021 letter they moved to Pennsylvania because of Plaintiff's paranoia and desire to isolate after people had come to their house, because he "could not handle any activity in his house" and had "been terribly scared even if people [came] to the door." AR 2035.

The Court agrees Plaintiff's cross-country moves do not constitute a specific, clear, and convincing reason to discount his testimony regarding the severity of his mental health symptoms. The ALJ stated in his opinion he considered both letters from Plaintiff's wife to be "helpful and instructive in formulating the RFC" and gave no indication he gave only partial weight or credit to any aspect of her testimony. If he did not accept some of

the statements in her letters, the ALJ was required to provide germane reasons for rejecting them. *See, e.g.*, *Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) ("If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness.") (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)); *Schiffer v. Berryhill*, 756 F. App'x 763, 764 (9th Cir. 2019) (finding reversible error where an ALJ failed to provide reasons for not accepting some of the statements by a lay witness after assigning great weight to her statements).

Here, the evidence in the record shows Plaintiff's cross-country moves were the result of impulsive decisions due to Plaintiff's mental health symptoms, including paranoia, anxiety, and a flight instinct. *See* AR 1498–99 (Plaintiff testifying, "I just have this impulse of that I have to leave and I have to go somewhere. Probably the most extreme was the Pennsylvania and that, I think that was like my last straw" and his "poor" wife "just gets dragged everywhere" when he had the impulse to move); AR 2035 (Plaintiff's wife's statement he was "active[ly] paranoid" and "very afraid" before the move to Pennsylvania, which was triggered by a family asking to stay with Plaintiff and his wife and Plaintiff being afraid to "let them know that he cannot live with people because of his mental conditions so he ran instead to Pennsylvania[,]" as well as his grandson bringing three friends to the house, which was "too much for my husband's head, he could not handle any activity in his house"); AR 2063 (Plaintiff's wife's statement that Plaintiff "struggled all through our marri[ed] life with cycling strong symptoms from his mental illness and it reflected in his jobs and moving me and the kids from house to house different states all the time" and explaining that the family "kept moving and moving to the point of all of us being chronically homeless and this behavior kept on repeating because of his persisting Ptsd/anxieties, compulsions"). Therefore, the ALJ's reliance on the cross-country moves as evidence Plaintiff is "not as limited as he alleged in his disability application" was erroneous.

Nonetheless, because the ALJ identified other clear and convincing reasons to discount Plaintiff's testimony, his error in citing one invalid reason does not warrant

remand. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008) (upholding an ALJ's decision even where two of the ALJ's reasons supporting his adverse credibility finding were invalid, because "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal.") (internal alterations, quotations, and citation omitted). As explained above, the ALJ provided specific, clear, and convincing reasons to partially discount Plaintiff's subjective symptom testimony, by identifying inconsistencies within Plaintiff's testimony as well as inconsistencies between his testimony and the medical evidence of record.

Most importantly, even if Plaintiff had established the ALJ did not properly credit his testimony, Plaintiff does not explain in his Motion to Remand how the RFC determination would change if the ALJ had given full credit to Plaintiff's subjective statements regarding the persistence, intensity, and limiting effects of his symptoms. Plaintiff urges the Court to "reverse and remand for proper consideration of [Plaintiff's] testimony about the severity of his mental health." [ECF No. 17 at 15.] However, Plaintiff's testimony regarding his mental health reflects the "biggest symptom" he experiences mentally was "not wanting to be around people" and he "really just like[d] to be alone." AR 1496; *see also* AR 476 (Plaintiff's Function Report, stating he was "not good around a lot of people and people don't like to be around me sometimes" and he "used to socialize a lot, [now] would rather be alone"). The ALJ's RFC determination restricts Plaintiff to no interaction with the general public, and only occasional work-related, non-personal, non-social interaction with co-workers and supervisors. AR 1455. Nowhere does Plaintiff explain which additional mental limitations would be warranted if his subjective testimony regarding the severity of his mental health symptoms were given full credit. In other words, even if the ALJ erred by rejecting Plaintiff's subjective statements, Plaintiff bears the burden of showing why such an error was not harmless, and

he has not done so. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009). For these reasons, the Court rejects Plaintiff's first claim of error.

**B.** **Whether the ALJ properly incorporated Dr. Nicholson's opinion into the RFC determination**

Plaintiff underwent a psychiatric consultative examination with Dr. Nicholson on March 11, 2021. AR 2636–41. Dr. Nicholson first summarized the information provided by Plaintiff and his wife regarding his medical and psychiatric history, current medications, social, educational, legal, and employment history, drug and alcohol use, and activities of daily living. AR 2636–38. Dr. Nicholson then conducted a mental status examination of Plaintiff and recorded observations regarding his appearance, attitude, behavior, thought processes and content, mood and affect, speech, intellectual functioning, memory, fund of knowledge, concentration and calculation, and his insight and judgment. AR 2638–40. Dr. Nicholson provided his diagnostic impression, prognosis, and a functional assessment as follows:

1. The claimant is able to understand, remember, and carry out simple one or two-step job instructions.
2. The claimant is able to do detailed and complex instructions.
3. The claimant's ability to relate and interact with coworkers and the public is moderately limited.
4. The claimant's ability to maintain concentration and attention, persistence and pace is moderately limited.
5. The claimant's ability to accept instructions from supervisors is moderately limited.
6. The claimant's ability to maintain regular attendance in the workplace and perform work activities on a consistent basis is moderately limited.
7. The claimant's ability to perform work activities without special or additional supervision is moderately limited.

AR 2640–41. Additionally, Dr. Nicholson found that Plaintiff is capable of handling funds. AR 2641.

In his opinion, the ALJ stated that Dr. Nicholson's opinion was persuasive except for his finding Plaintiff was "able to do detailed and complex instructions." AR 1466. The ALJ found "[t]his part of the opinion of Dr. Nicholson was not persuasive because the

balance of the record showed the claimant [could] understand, remember, and carry out simple, routine tasks, [was] limited to jobs requiring only simple work-related decisions, but [could] keep pace sufficient to complete tasks and meet quotas typically found in unskilled work." *Id.* Otherwise, the ALJ specifically mentioned and credited Dr. Nicholson's findings listed at Nos. 1, 3–4, and 6–7 above. *Id.* That is, relevant to Plaintiff's claim of error, the ALJ found persuasive Dr. Nicholson's finding that Plaintiff was moderately limited in his ability to maintain regular attendance in the workplace and perform work activities on a consistent basis and moderately limited in his ability to perform work activities without special or additional supervision. The ALJ did not mention Dr. Nicholson's opinion that Plaintiff was moderately limited in his ability to accept instructions from supervisors, or his capability of handling funds. *Id.*

Plaintiff argues the ALJ did not properly incorporate Dr. Nicholson's opinion into his RFC determination, despite finding it persuasive, because the RFC does not clearly accommodate Plaintiff's moderate limitations in (1) the ability to maintain regular attendance in the workplace and perform work activities on a consistent basis; (2) the ability to accept instructions from supervisors; and (3) the ability to perform work activities without special or additional supervision. [ECF No. 17 at 18–19.] Plaintiff cites to several cases in which courts have found error where an ALJ neither accounts for a moderate limitation in the RFC determination nor explicitly rejects the limitation with supporting reasons. [*Id.* at 19–20 (citing *Christopher G. v. Saul*, No. 19-CV-06150, 2020 WL 2079972, at *6–7 (C.D. Cal. Apr. 30, 2020); *Raymond v. Berryhill*, No. 17-CV-01112, 2018 WL 3691842, at *6 (C.D. Cal. Aug. 2, 2018); *Wiles v. Berryhill*, No. 16-CV-09558, 2017 WL 5186333, at *3 (C.D. Cal. Nov. 8, 2017)).] Additionally, Plaintiff cites to various portions of the agency's internal Program Operation Manual System ("POMS"), which provide that the ability to "maintain regular attendance and be punctual within customary tolerances," the ability to "accept instructions and respond appropriately to criticism from supervisors," and the ability to "sustain an ordinary routine without special supervision"

are all "critical" for performing unskilled work. [*See* ECF No. 17 at 21–22]; POMS DI 25020.010(B)(3)(e), (f), (k).

In response, the Defendant argues the agency considers moderate limitations to mean the claimant has a "fair" ability to function independently, appropriately, or effectively on a sustained basis in the functional area. [ECF No. 19 at 8 (citing to the definition of "moderate limitation" as used in the paragraph B criteria for rating the severity of mental disorders) (citing 20 C.F.R. part 404, subpart P, appendix. 1, § 12.00(F)(2)(c)) (other citation omitted).] Additionally, Defendant argues moderate psychological symptoms do not preclude all work-related activities and do not in each instance require an ALJ to include limitations within the RFC finding. [*Id.* at 9.] In support, Defendant cites to several cases where an ALJ's decision was upheld despite no specific accommodation for certain moderate non-exertional limitations in the RFC. [*Id.* (citing *Shaibi v. Berryhill*, 870 F.3d 874, 877–80 (9th Cir. 2017); *Jamma v. Berryhill*, No. 17-cv-1520, 2018 WL 4537749, at *2 (S.D. Cal. Sept. 21, 2018); *Myra L. G. v. Kijakazi*, No. 20-cv-00447, 2021 WL 4197338, at *2 (C.D. Cal. Sept. 15, 2021)).] Defendant further argues Dr. Nicholson's opinion "did not demand additional RFC restrictions beyond those the ALJ assessed" because Dr. Nicholson did not opine Plaintiff's moderate limitations precluded him from working or otherwise required any concrete restrictions beyond those included in the RFC—that is, a limitation to performing simple and routine tasks, with only occasional, non-social interaction with coworkers and no public interaction in jobs requiring simple work-related decisions. [*Id.* at 9–10.] Finally, Defendant notes the ALJ's RFC determination is consistent with the restrictions recommended by the medical expert who testified during the supplemental hearing, who also identified moderate limitations in three of the four broad areas of functioning enumerated in the paragraph B criteria, which include the ability to understand, remember, or apply information, the ability to

interact with others, the ability to concentrate, persist, or maintain pace, and the ability to adapt or manage oneself. [*Id.* at 10]; *see also* AR 1484–87.[11]

The Court finds merit in Plaintiff's second claim of error. While substantial evidence supports the conclusion the ALJ's RFC determination adequately encompasses Plaintiff's moderate limitations in concentration, persistence, and pace, the ability to adapt and manage himself, the ability to interact with others, the ability to understand, remember, and apply information, and the ability to accept instructions from supervisors, the Court cannot conclude these restrictions account for Plaintiff's moderate limitations in the ability to maintain regular attendance in the workplace and perform work activities on a consistent basis. There is ample support in the case law for the proposition that an RFC limiting a claimant to simple, routine tasks adequately accounts for a limitation in concentration, persistence, or pace. *See, e.g.*, *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir. 2008); *Israel v. Astrue*, 494 F. App'x 794, 796 (9th Cir. 2012); *Jeremy S. v. O'Malley*, No. 23-cv-00184, 2024 WL 343179, at *19 (S.D. Cal. Jan. 29, 2024). Such a limitation has also been found to account for a claimant's "moderate difficulties in the broad area of social functioning"—that is, the "ability to interact with others" area of social functioning under the paragraph B criteria. *Rogers v. Comm'r of Soc. Sec. Admin*, 490 F. App'x 15, 17 (9th Cir. 2012).

Courts in this district have also found an RFC restricting a claimant to "occasional interaction with co-workers and supervisors, and no direct interaction with the general public" was adequate to account for a moderate limitation in the ability to accept

---

[11] The medical expert opined Plaintiff had moderate limitations in all areas of functioning except for the ability to understand, remember, and apply information, and recommended his RFC include restrictions to simple instructions, a routine work setting with routine changes, no fast-paced work, only occasional, superficial interactions with coworkers and supervisors, no interaction with the general public, and no work requiring coordination or cooperation with a team in order to accommodate those limitations. AR 1484–87. She opined Plaintiff would be able to accept criticism from supervisors and respond to "ordinary supervision." AR 1487.

instructions and respond appropriately to criticism from supervisors. *See McIntosh v. Colvin*, No. 16-cv-0963, 2018 WL 1101102, at *6 (S.D. Cal. Feb. 26, 2018) (citation omitted); *Jeremy S.*, 2024 WL 343179, at *21 (finding that an RFC restricting the plaintiff to "simple, repetitive jobs in a non-public work environment" adequately incorporated moderate limitations in the plaintiff's ability to relate to and interact with coworkers and the public and to accept instructions from supervisors) (citation omitted). Additionally, the Ninth Circuit has upheld an ALJ's decision where he translated two doctors' opinions a claimant was moderately limited in his interactions with coworkers and could "relate to others on a superficial work basis" into an RFC restriction limiting him to "simple routine tasks in a non-public setting, with occasional interaction with coworkers." *Shaibi*, 883 F.3d at 1106–08 (internal quotations and citation omitted).

These conclusions are sensible in light of the fact an RFC is not required to "recite medical opinions verbatim[;] rather the ALJ is responsible for translating and incorporating medical findings into a succinct RFC." *McIntosh*, 2018 WL 1101102, at *5 (citation omitted). Therefore, where there is record evidence to support a finding the ALJ translated a given limitation into a restriction in the RFC—albeit in other words—courts will often find no error. *See, e.g.*, *id.* at *6 (finding an RFC restricting the plaintiff to "occasional interaction with co-workers and supervisors, and no direct interaction with the general public" adequately accounted for moderate limitations in the plaintiff's ability to interact with co-workers, supervisors, and the public, as well as in the ability to interact appropriately with the general public and respond appropriately to criticism from supervisors); *Jeremy S.*, 2024 WL 343179, at *19 (finding an RFC limiting the plaintiff to "simple, repetitive jobs in a non-public work environment" fairly accommodated moderate limitations in the plaintiff's ability to maintain attention, concentration, persistence, and pace for extended periods and the ability to maintain socially appropriate behavior).

For these reasons, the Court finds the restrictions in Plaintiff's RFC adequately account for most of the moderate limitations assessed by Dr. Nicholson and credited by

the ALJ, including moderate limitations in the ability to relate and interact with coworkers and the public, the ability to maintain concentration and attention, persistence and pace, and the ability to accept instructions from supervisors. However, the Court cannot say the non-exertional restrictions included in Plaintiff's RFC adequately account for moderate limitations in his ability to maintain regular attendance in the workplace and perform work activities on a consistent basis, or in the ability to perform work activities without special or additional supervision.

The Ninth Circuit has found reversible error where an ALJ "placed great weight" on a medical opinion that assessed moderate limitations in the "abilities to maintain regular attendance, to sustain an ordinary routine, and to complete a normal work day or week without interruption" but did not discuss or analyze how those limitations would affect the claimant's ability to work, and rejecting the district court's "reading between the lines" to find an "implied" rationale for the ALJ's choice not to incorporate those restrictions in the RFC or pose them in the hypothetical question to the VE. *Morinskey v. Astrue*, 458 F. App'x 640, 641 (9th Cir. 2011).

Numerous other courts in this Circuit have reached the same conclusion where an ALJ credits a medical opinion stating a claimant has moderate limitations in the ability to maintain regular attendance and in the ability to perform work activities without special or additional supervision but fails to include those limitations in the RFC or provide legally sufficient reasons for rejecting them. *See, e.g.*, *Jeremy S.*, 2024 WL 343179, at *22 (finding reversible error where the ALJ failed to include accepted moderate limitations in maintaining regular attendance in the workplace, performing work activities on a consistent basis, and performing work activities without special or additional supervision in either the hypothetical posed to the VE or in the RFC); *Panziera v. Berryhill*, 2018 WL 278623, at *20 (N.D. Cal. Jan. 3, 2018) (rejecting the Commissioner's reliance on the holding in *Stubbs-Danielson* that moderate limitations in concentration, persistence, or pace are adequately captured by an RFC limiting the plaintiff to simple, repetitive tasks, and collecting cases for the proposition that "the Ninth Circuit and district courts in the

Ninth Circuit have held that *Stubbs-Danielson* does not control in cases where the limitations relate to functional areas other than concentration, persistence, and pace, such as social functioning and attendance"); *Raymond*, 2018 WL 3691842, at *6 (explaining that, while a restriction to unskilled work "may encompass . . . moderate limitations in concentration, persistence, and pace," it "does not sufficiently account for . . . moderate limitations in performing routine work duties and maintaining consistent attendance in the workplace"); *Macias v. Saul*, No. 19-cv-01187, 2021 WL 856423, at *5–6 (E.D. Cal. Mar. 8, 2021) (finding reversible error where an ALJ's RFC limitation to "simple 1 or 2 step tasks" did not adequately account for a claimant's moderate limitations in maintaining attendance, and finding *Stubbs-Danielson* distinguishable "as the moderate restrictions at issue here involve limitations in maintaining attendance and completing a normal workday, not limitations in concentration, persistence or pace"); *Atkinson v. Colvin*, No. EDCV 14-02337, 2015 WL 5840210, at *3 (C.D. Cal. Oct. 5, 2015) ("Although the ALJ's RFC restriction for non-complex tasks may encompass the concentration, persistence, and pace limitations assessed by Dr. Ijeaku, the RFC does not sufficiently account for Plaintiff's moderate limitations in performing activities within a schedule, maintaining regular attendance in the workplace, or completing a normal workday and workweek without interruption.") (citation omitted); *Wiles*, 2017 WL 5186333, at *3 (finding that the plaintiff's moderate limitations in her ability to perform work activities consistently without special instructions and her ability to maintain regular attendance and complete a normal workday without interruption were not adequately accommodated by an RFC restricting her to "simple routine tasks with limited public contact, further defined as no more than superficial incidental contact") (citation omitted).

The Court agrees with the rationale in the cases outlined above. Again, the ALJ here included the following non-exertional restrictions in Plaintiff's RFC: (1) a limitation to understanding, remembering, and carrying out simple, routine tasks; (2) no interaction with the general public; (3) only occasional work-related, non-personal, non-social interaction with co-workers and supervisors; and (4) a limitation to jobs requiring only simple work-

related decisions. AR 1455. The Commissioner has not pointed the Court to any case in which a court has concluded moderate limitations in the ability to maintain regular attendance in the workplace and perform work activities on a consistent basis, and in the ability to perform work activities without special or additional supervision, are adequately captured by restrictions to simple, routine, unskilled work with additional social functioning limitations. Although the Court agrees such moderate limitations are "not per se disabling, they may translate into concrete work restrictions which, when considered in connection with [his] other restrictions, may render him disabled." *Timothy B. v. Saul*, No. 20-cv-03411, 2022 WL 181261, at *5 (N.D. Cal. Jan. 20, 2022); *see also Jeremy S.*, 2024 WL 343179, at *22 ("While moderate limitations do not necessarily indicate that Plaintiff is unable to adequately perform work activity, the ALJ was required to either include these limitations in Plaintiff's RFC assessment or provide legally sufficient reasons for rejecting them.").

Further, when the ALJ initially posed the hypothetical RFC that ultimately matched his RFC determination to the VE, he did not include in his question anything about Plaintiff's moderate limitations in the ability to maintain regular attendance in the workplace or in his ability to perform work activities without special or additional supervision, despite expressly finding that "[t]his part of Dr. Nicholson's opinion is persuasive because the conclusions are supported by Dr. Nicholson's findings upon examination . . . . [and] are consistent with the balance of the clinical findings of the treating mental health sources." AR 1466; *see* AR 1508–09. Therefore, the VE's response to the initial hypothetical that a person with those limitations could perform the jobs of linen attendant, laundry worker, or hospital cleaner cannot constitute substantial evidence to support a step-five finding that a person with the *additional* moderate limitations in the ability to maintain regular attendance in the workplace and the ability to perform work activities without special or additional supervision would also be able to perform those jobs. AR 1468–69. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006

(9th Cir. 2015). Where the ALJ "fail[s] to include all of [the plaintiff's] impairments in his residual functional capacity determination and, therefore, ask[s] an erroneous hypothetical question of the vocational expert[,]" the VE's testimony cannot constitute substantial evidence to support the ALJ's findings. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (citation omitted).

Therefore, while the Court finds the authorities cited by the Commissioner support a conclusion the ALJ's RFC determination accommodates Plaintiff's moderate limitations in the four broad areas of functioning set forth in the paragraph B criteria, as well in the ability to relate and interact with coworkers and the public, the ability to maintain concentration and attention, persistence and pace, and the ability to accept instructions from supervisors, there is not substantial evidence to support the finding the RFC accommodates his moderate limitations in the ability to maintain attendance and perform work activities on a consistent basis and the ability to perform work activities without special or additional supervision. The ALJ erred in failing to include these moderate limitations assessed by Dr. Nicholson—and fully credited by the ALJ—in his hypothetical to the VE or in his RFC determination.

Further, the Court cannot find the error was harmless. The VE testified a person can only be off-task for up to ten percent of the workday and can only be absent from work one day per month to remain employable. AR 1510. Accordingly, she confirmed an additional limitation "that either the individual would be off[-]task greater than ten percent of the workday or in the alternative would be absent two or more days a month on a recurring basis" would "preclude all work." AR 1510–11. The Commissioner's argument that a "moderate" limitation is defined as a "fair" ability to function independently, appropriately, or effectively on a sustained basis in the functional area does not answer whether a person with such limitations would be able to meet a 90% benchmark for being on-task or a roughly 95% benchmark for maintaining attendance. Without any such evidence, it is not "clear from the record that the ALJ's error was inconsequential to the

1    ultimate nondisability determination[,]" as needed to find harmless error. *Garcia*, 768 F.3d
2    at 932 (internal quotations and citation omitted).

3    **V.    Remand**

4    It is well-established the Court has discretion whether to remand for further
5    proceedings or for payment of benefits. *See, e.g.*, *Harman v. Apfel*, 211 F.3d 1172, 1177–
6    78 (9th Cir. 2000); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). "If additional
7    proceedings can remedy defects in the original administrative proceedings, a social
8    security case should be remanded. Where, however, a rehearing would simply delay
9    receipt of benefits, reversal [for an immediate award of benefits] is appropriate." *Id.*
10   Remand for the immediate payment of benefits is also appropriate "where the record has
11   been developed fully and further administrative proceedings would serve no useful
12   purpose[.]" *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

13   Here, the Court finds remand for further administrative proceedings is appropriate.
14   During the hearing, the VE opined that an individual with Plaintiff's RFC and with the
15   additional limitation of "be[ing] off task greater than ten percent of the workday or in the
16   alternative would be absent two or more days a month on a recurring basis" would
17   preclude all work. AR 1510–11. However, the ALJ may have an unstated reason why he
18   excluded those limitations from his ultimate RFC determination, despite finding that
19   portion of Dr. Nicholson's opinion persuasive. Therefore, additional administrative
20   proceedings could remedy the defects in the ALJ's decision.

21   **VI.    CONCLUSION**

22   For the reasons set forth above, the Court finds the ALJ committed reversible error
23   by failing to incorporate Plaintiff's moderate limitations in the ability to maintain
24   attendance and perform work activities on a consistent basis and the ability to perform
25   work activities without special or additional supervision into his RFC determination, or to
26   otherwise provide legally sufficient reasons for rejecting those limitations.

27   / /
28   / /

Therefore, pursuant to sentence four of 42 U.S.C. § 405(g), **IT IS HEREBY ORDERED** the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings consistent with this opinion.

The Clerk shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED**.

Dated:  March 29, 2024

HON. MICHELLE M. PETTIT
United States Magistrate Judge